HAMILTON, Senior Circuit Judge,
concurring in part and dissenting in part:
I agree with the majority that Travelers Property Casualty Corporation (Travelers) had no duty to defend some of the claims asserted against Mitchell, Best, and Visnic, Incorporated (MBV) in the three related lawsuits which involved disputes concerning restrictive covenants related to land located in Potomac Hunt Acres (Ardnave), a subdivision owned by the Livingston Family Limited Partnership (Livingston) in Montgomery County, Maryland. However, I believe Travelers had a duty to defend some of the claims asserted against MBV and, therefore, I concur in part and dissent in part.
I
MBV was Livingston’s sales agent in Ardnave and built several custom homes on lots purchased there. Ardnave was part of a larger tract of land formerly owned by the Federal Deposit Insurance Corporation (FDIC). In 1993, the FDIC conveyed one portion of the tract to Livingston and the remainder of the tract to Kodor Associates Limited Partnership (Kodor). As part of that transaction, Livingston and Kodor executed a declaration of covenants (the Original Covenants) that was recorded among the land records of Montgomery County in 1993. In 1998, Livingston and Kodor executed a release of declaration of covenants and, simultaneously, a second declaration of covenants (the Revised Covenants) all of which were also recorded among the land records of Montgomery County. In 1998, Kodor purchased a lot in Ardnave for $595,000. The issues in the litigation that ensued concerned the validity, enforceability, and the interpretation of the Original Covenants, the release, and the Revised Covenants, as well as whether MBV had induced Kodor to revise the Original Covenants by making material misrepresentations regarding MBV’s intent to keep Kodor advised of the nature of the houses being built in Ardnave and whether Livingston was selling lots in Ardnave that were subject to a separate set of covenants, drafted by Livingston (the Livingston Covenants), that were less restrictive than either the Original Covenants or the Revised Covenants.
II
As recognized by the majority, subject to certain express definitions, exclusions, and conditions, the policy at issue in this case states:
We will pay those sums that the insured becomes legally obligated to pay as damages because of “bodily injury” or “property damage” to which this insurance applies. We will have the right and duty to defend any “suit” seeking those damages.
(J.A. 34). This insurance applies to “bodily injury” and “property damage” only if the bodily injury or property damage is caused by an “occurrence” that takes place in the “coverage territory.” Id. The policy defines “property damage” as:
a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the “occurrence” that caused it.
(J.A. 44).
In my opinion, there are two claims that were asserted against MBV that Travelers *79 had a duty to defend. The first claim is a counterclaim that was asserted against MBV. The counterclaim centers on Kodor’s allegation that MBV’s misrepresentations resulted in Kodor paying more for its lot in 1998 than the lot was worth and that, under the Revised/Livingston Covenants, a house built on its lot would have unsightly or obstructed views. The simple reason why this claim involves the “loss of use of tangible property” is because the view from the lot constitutes a use of tangible property. The view being lost means that there is a loss of use. Travelers suggests that there was only a loss of the ability to enforce a restrictive covenant, not a loss of use. However, the “intangible” covenant does not affect, much less diminish, the fact that Kodor alleges a loss of use of its tangible property.
The second claim involves a cross-claim (the Kamba/Hackney Cross-Claim) that was asserted against MBV. Kamba and Hackney had purchased a lot in Ardnave and contracted with MBV to build a home on that lot. The Kamba/Hackney Cross-Claim alleged, among other things: (1) that, if the covenants were construed in the manner requested by Kodor, MBV had misrepresented the kind of structures that could be built on the Kamba/Hackney lot, (2) that, as a result of these misrepresentations, the Kamba/Hackney residence might have to be reconfigured or deconstructed, and (3) that, as a result of MBV’s misrepresentations, Kamba/Hackney would be harmed in that they could not build certain structures on their property, namely, a pool house.
The allegations of harm in the Kamba/Hackney Cross-Claim fit the definition of “loss of use of tangible property” as defined in the subject policy. If the covenants are construed in the manner requested by Kodor, Kamba/Hackney cannot build a pool house and, therefore, have a loss of use. Also, if the covenants are construed in the manner requested by Kodor, Kamba/Hackney cannot use then-house in its current form (a loss of use and/or views) because it may have to be reconfigured to conform to the covenants.
Ill
In summary, although I agree with the majority that Travelers had no duty to defend some of the claims asserted against MBV, I am of the opinion that Travelers had a duty to defend: (1) the Kodor counterclaim that centered on Kodor’s allegation that MBV’s misrepresentations resulted in Kodor paying more for its Ardnave lot in 1998 than the lot was worth and that, under the Revised/Livingston Covenants, a house built on its lot would have unsightly or obstructed views; and (2) the Kamba/Hackney Cross-Claim. Accordingly, I concur in the court’s opinion in part and dissent from it in part.